**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

FOOD INVESTMENT SPA, JOYVIO
GROUP CO., LTD., and BJ JOYVIO
ZHENCHENG TECHNOLOGY CO., LTD.,

Petitioners,

v.

ISIDORO QUIROGA MORENO,
ASESORÍAS E INVERSIONES BENJAMÍN
S.A., MARÍA VICTORIA QUIROGA
MORENO, MARÍA DOLORES QUIROGA
MORENO, MARÍA DOLORES FELIÚ
QUIROGA, JORGE ESTEBAN FELIÚ
QUIROGA, and PAULINA ANDREA
FELIÚ QUIROGA,

Respondents.

Case No. _____

**PETITION TO CONFIRM**
**FOREIGN ARBITRATION AWARD**
**AND MEMORANDUM OF LAW IN**
**SUPPORT**

Petitioner Food Investment SpA, Joyvio Group Co., Ltd., and BJ Joyvio Zhencheng Technology Co., Ltd., (collectively, "**Joyvio**," "**Petitioners**," or "**Claimants**"), by and through their attorneys, Quinn Emanuel Urquhart & Sullivan, LLP, hereby file this petition to confirm the arbitration award rendered by a tribunal of the Arbitration and Mediation Center, Chamber of Commerce of Santiago ("*Centro de Arbitraje y Mediación, Cámara de Comercio de Santiago* (the "**CAM**")), on May 22, 2025 (the "**Award**"), against Respondents Isidoro Quiroga Moreno, Asesorías e Inversiones Benjamín S.A., María Victoria Quiroga Moreno, María Dolores Quiroga Moreno, María Dolores Feliú Quiroga, Jorge Esteban Feliú Quiroga, and Paulina Andrea Feliú Quiroga (collectively, the "**Respondents**"), pursuant to the Federal Arbitration Act (the "**FAA**"), 9 U.S.C. §§ 1-16, the Inter-American Convention on International Commercial Arbitration, opened for signature Jan. 30, 1975, O.A.S.T.S. No. 42, 1438 U.N.T.S. 245 (the "**Panama**

1

Convention"), as implemented, 9 U.S.C. §§ 301-307, and provisions of 9 U.S.C. Ch. 2 incorporated thereby, and for entry of a money judgment recognizing the Award.

As required by 9 U.S.C. § 13, attached to and filed herewith are true and correct copies of (i) the parties' agreements to arbitrate (*see* annexed Declaration of Jason D. Sternberg ("**Sternberg Decl.**"), Ex. A, Stock Purchase Agreement (the "**SPA**")), at Section 9.12, and the CAM Arbitration Rules, expressly incorporated therein); (ii) the final duly certified copy of the arbitration award, with certified English translation (*id.*, Ex. B (the "**Award**")); and (iii) the appointments of Andrés Jana Linetzky, Ramón Cifuentes Ovalle, and Pedro Pablo Vergara Varas as arbitrators (*id.*, Ex. C). No previous application has been made to confirm, modify, or correct the Award pursuant to the FAA.

## NATURE OF THE ACTION

1.      On January 26, 2023, Joyvio filed a request for arbitration with the CAM seeking to recover damages for breaches of and misrepresentations made by Respondents in the SPA, pursuant to which the Respondents sold their majority stake in Australis Seafoods S.A. to Joyvio for nearly US$ 1 billion.  The arbitration, *Food Investment SpA et al. v. Isidoro Quiroga Moreno et al.*, CAM Arbitration No. A- 5.484- 2023 (the "**Arbitration**"), was heard by a three-person tribunal of arbitrators (the "**Tribunal**") appointed by the parties in accordance with the SPA.  After extensive briefing, discovery, and a nearly four-week hearing, the Tribunal issued the Award on August 1, 2025, ruling in favor of Joyvio.  Among other things, the Award (i) declared that Respondents breached the SPA; and (ii) awarded Joyvio (a) **US$ 217,211,355** in damages; (b) interest on that amount at the Chilean legal rate from July 1, 2019 until full payment; and (c) 15.4% of their arbitral costs.  *See generally* Award.

## PARTIES

2.    Petitioner Food Investment SpA is a company organized under the laws of Chile with its principal place of business in Chile.

3.    Petitioner Joyvio Group Co., Ltd. is a company organized under the laws of the People's Republic of China with its principal place of business in the People's Republic of China.

4.    BJ Joyvio Zhencheng Technology Co., Ltd., is a company organized under the laws of the People's Republic of China with its principal place of business in the People's Republic of China.  The three Petitioners were the "**Claimants**" in the Arbitration.

5.    Respondent Isidoro Quiroga Moreno is a Chilean citizen.  Quiroga is a billionaire businessperson who indirectly owned and controlled Australis Seafoods S.A. ("**Australis**") before selling it to Joyvio through four corporate entities.

6.    Respondent Asesorías e Inversiones Benjamín S.A. ("**Benjamín S.A.**"), is a corporation organized under the laws of Chile with its principal place of business in Chile.  In the Arbitration, Benjamín S.A. appeared on its own behalf and in its capacity as successor of Inversiones ASF Limitada, which is discussed in paragraph 10 below.

7.    Respondent María Victoria Quiroga Moreno is a Chilean citizen.  She appeared in the Arbitration as legal successor of Inversiones Arlequín Dos Limitada, which is discussed in paragraph 10 below.

8.    Respondents María Dolores Quiroga Moreno, María Dolores Feliú Quiroga, Jorge Esteban Feliú Quiroga, and Paulina Andrea Feliú Quiroga, are Chilean citizens.  They appeared in the Arbitration as former partners and liquidators of the liquidated company Inversiones Los Diamantes Limitada, the legal successor of Inversiones Ruiseñor Limitada, in turn the legal successor of Inversiones Ruiseñor Dos Limitada.

9.      Non-party Australis is a corporation organized under the laws of Chile with its principal places of business in Chile.

10.     Non-parties Inversiones ASF Limitada, Inversiones Arlequín Dos Limitada, and Inversiones Ruiseñor Dos Limitada were at all relevant times companies organized under the laws of Chile with their principal places of business in Chile, and, together with Respondent Benjamín S.A., are the "**Sellers**" of Australis.

## <u>JURISDICTION AND VENUE</u>

11.     This Court has subject matter jurisdiction over this confirmation proceeding pursuant to Chapters 2 and 3 of the FAA.

12.     Chapter 3 of U.S.C. Title 9 implements the Panama Convention, while Chapter 2 implements the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38 (the "**New York Convention**").  Under 9 U.S.C. § 305, "[w]hen the requirements for application of both [Conventions] are met," the Panama Convention shall apply "[i]f a majority of the parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to the [Panama] Convention and are member States of the Organization of American States [("**OAS**")]."  Here, a majority of the parties to the SPA and the Arbitration were citizens of Chile, and Chile has both ratified the Panama Convention and is a member of OAS.[1]  Accordingly, the Panama Convention and Chapter 3 of the FAA apply to this proceeding.

13.     Under 9 U.S.C. § 302, "Sections 202, 203, 204, 205, and 207 of this title shall apply to this chapter as if specifically set forth herein, except that for the purposes of this chapter 'the

---

[1] *See* Panama Convention Signatories, OAS, https://www.oas.org/juridico/english/sigs/b-35.html (last accessed August 15, 2025); Member States, OAS, https://www.oas.org/en/member_states/default.asp (last accessed August 15, 2025).

Convention' shall mean the [Panama] Convention," rather than the New York Convention. Moreover, "[w]ith respect to enforcement matters and interpretation, the New York Convention … and the Panama Convention are substantially identical. Thus, the case law interpreting provisions of the New York Convention are largely applicable to the Panama Convention and vice versa." *Hidroelectrica Santa Rita, S.A. v. Corporacion AIC, S.A.*, 684 F. Supp. 3d 1277, 1281 (S.D. Fla. 2023), *aff'd sub nom. Hidroelectrica Santa Rita S.A. v. Corporacion AIC, SA*, 119 F.4th 920 (11th Cir. 2024). Accordingly, case law interpreting the New York Convention and Ch. 2 of the FAA is cited throughout this Petition.

14.     Under 9 U.S.C. § 203, this Court has "original jurisdiction" over "[a]n action or proceeding falling under the [Panama] Convention" "regardless of the amount in controversy." The Award arose out of a legal relationship that is commercial in nature, because the SPA is a contract for the sale of a company, Australis, from the Sellers to Joyvio. *See* 9 U.S.C. § 202. Further, the dispute is not entirely between citizens of the United States, as it is between foreign corporate entities and individuals, the majority of which are Chilean. *See* 9 U.S.C. §§ 202, 305; *see also Tecnicas Reunidas de Talara S.A.C. v. SSK Ingenieria y Construccion S.A.C.*, 40 F.4th 1339, 1344 (11th Cir. 2022) ("an arbitration not entirely between citizens of the United States" falls under 9 U.S.C. § 202 and the Convention). The Award therefore falls under the Convention.

15.     This Court has personal jurisdiction over Respondents, and venue is proper here, for several reasons.

16.     **First**, this Court has personal jurisdiction over Respondents because they intervened in a proceeding in this District filed by Joyvio, pursuant to 28 U.S.C. § 1782, seeking this Court's assistance in obtaining discovery from JPMorgan Chase Bank, a financial institution found in this District, in connection with the facts underlying this dispute. *See In Re: Application*

*of Food Investment SPA and Australis Seafoods S.A.*, Case No. 1:23-cv-22492-JB (S.D. Fla.) ("**Florida Section 1782 action**"), Dkts. 1 (application); 3 (consent motion for Respondents to intervene); 36 (amended application).   Respondents participated, and affirmatively requested relief, in the Florida Section 1782 action, including intervention (*id.*, Dkt. 3), the denial of the discovery sought by Joyvio (*id.*, Dkts. 14 at 8-19; 37 at 6-19), two protective orders (*id.*, Dkts. 14; 37), a stay (*id.*, Dkt. 14 at 19), and attorney's fees (*id.* at 20).   Respondents argued that Joyvio's Section 1782 application be denied in favor of the Arbitration, admitting that the two proceedings shared the same subject matter.  *Id.*, Dkts. 14 at 12-14; 37 at 2-4, 8-14, 18-19.  Both parties also submitted filings from the Florida Section 1782 Action as exhibits in the Arbitration.  *See* Award ¶¶ 134 (Ex. R-393), 135 (Ex. C-806), 136 (Exs. R-414, R-415).  Respondents were successful, as this Court partially denied Joyvio's application and partially granted their motion for a protective order.  *See* Florida Section 1782 action, Dkts. 58 (hrg. tr.), 60 (omnibus order).  Moreover, this Court ordered Respondents to provide discovery to Joyvio, and Respondents complied, reflecting their submission to this Court's jurisdiction.  *Id.*, Dkt. 59 (notice of compliance).

17.     Accordingly, because Respondents, as "[i]ntervenors[,] moved to participate in the [Florida] Section 1782 Action," they "actually litigate[d] the underlying merits or demonstrate[d] a willingness to engage in extensive litigation in the forum" so as to "have consented to personal jurisdiction" of the Court.  *Iraq Telecom Ltd. v. Mustafa*, 2024 WL 3927219, at *4 (E.D. Pa. Aug. 23, 2024) (finding personal jurisdiction and confirming foreign arbitration award against intervenors in Section 1782 action) (collecting cases).[2]

---

[2]     *See also In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1249 (11th Cir. 2006) ("[B]y filing a successful motion to intervene, [party] acquiesced to [personal] jurisdiction"); *Gradel v. Piranha Capital, L.P.*, 495 F.3d 729, 731 (7th Cir. 2007) (party "intervened in the [] suit and by doing so submitted himself to the jurisdiction of the court"); *Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477, 483 (6th Cir. 2002) ("[Intervenor's] attempt[] in his motion to intervene

18.     **Second**, the Court has general personal jurisdiction over Respondents pursuant to Florida's long-arm statute, Fla. Stat. § 48.193(2), which is "coextensive with the limits on personal jurisdiction imposed by the Due Process Clause," arising from "all of [their] contacts with Florida *in toto*" constituting "substantial and not isolated activity" in this Jurisdiction.  *Sequip Participacoes S.A. v. Marinho*, 2018 WL 10593628, at *6-7 (S.D. Fla. Oct. 16, 2018) (citations and quotation marks omitted) (finding general personal jurisdiction over foreign award debtor); *see also Sequip Participacoes S.A. v. Marinho*, 2018 WL 10593629 (S.D. Fla. Nov. 19, 2018) (confirming foreign arbitration award under Panama Convention), *amended*, 2019 WL 8301064 (S.D. Fla. Feb. 26, 2019).  In addition to intervening and requesting relief in the Florida Section 1782 action, on information and belief, Respondents regularly and systematically conduct business and own property in this District in the form of, at least, interests in financial accounts, including the JPMorgan account they sought to shield by intervening in the Florida Section 1782 action.

19.     **Third**, the Court has specific personal jurisdiction over Respondents pursuant to Florida's long-arm statute, Fla. Stat. § 48.193(1), arising from their operation of business and maintenance of property in this District, from which the underlying claim arose.  Among other things, Respondents have interests in financial accounts in this District, including the

---

to reserve his right to object to the district court's exercise of personal jurisdiction.... was unsuccessful, because a motion to intervene is fundamentally incompatible with an objection to personal jurisdiction."); *In re Texas E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1236 (3d Cir. 1994) (holding that parties submit to personal jurisdiction when they "demonstrate[ ] a willingness to engage in extensive litigation in the forum"); *Coleman v. Kaye*, 87 F.3d 1491, 1498-99 (3d Cir. 1996) (district court improperly vacated judgment against a county based on lack of personal jurisdiction where the county had intervened in an action, submitted to the court's jurisdiction, and waived any challenge to personal jurisdiction); *In re Application of Chevron Corp.*, 736 F. Supp. 2d 773, 786-87 (S.D.N.Y. 2010) (by intervening in a Section 1782 proceeding, intervenors "subjected themselves to the personal jurisdiction of this Court"); *Patton Boggs LLP v. Chevron Corp.*, 2012 WL 6568461, at *3 (D.N.J. July 18, 2012) (holding that personal jurisdiction lies when a party has "availed itself of that District with regard to multiple matters arising from this ongoing legal dispute" including a Section 1782 proceeding).

aforementioned JPMorgan account, relevant to the underlying dispute.  *See* Florida Section 1782 action, Dkt. 60 at 9-10; *see also, e.g.*, *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 178-79 (3d Cir. 2006) (when finding personal jurisdiction under long-arm statute, "the desire to have portability of arbitral awards prevalent in the Convention influences" the due process analysis).

20.     ***Fourth***, this Court has specific personal jurisdiction over Respondents under the federal long-arm statute, Federal Rule of Civil Procedure 4(k)(2), and the Due Process Clause of the Fifth Amendment to the U.S. Constitution.  Rule "4(k)(2) allows courts to aggregate nationwide contacts in order to exercise jurisdiction" to confirm a foreign arbitration award "where the defendant's contacts with any one state are insufficient." *Compania de Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuahua, S.A.B. de C.V.*, 2018 WL 10561511, at *3 (D. Colo. Dec. 12, 2018) (confirming foreign arbitration award), *aff'd*, 970 F.3d 1269 (10th Cir. 2020). On information and belief, Respondents possess property in, and do business in, this District, as explained above.  In addition, Respondents possess property and conduct business in, at least, Delaware and New York.

21.     ***Fifth***, Respondents are also subject to the Court's *quasi in rem* jurisdiction because they maintain property in this jurisdiction, including in the form of financial accounts and corporate interests, and the current action seeks the confirmation of an arbitration award that may be enforced against such property.  *See Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 396-98 (2d Cir. 2009) (holding foreign arbitration award may be confirmed based on *quasi in rem* jurisdiction); *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1120-22 (9th Cir. 2002) (same).

22.     Venue is proper in this Court under 9 U.S.C. § 204 because this Petition "may be brought in any such court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought."

## BACKGROUND

### I.     The Underlying Agreement and Dispute

23.     In 2017, Joyvio developed an interest in expanding into the animal protein market. Award ¶ 152.

24.     From late 2017 through early 2018, the parties began negotiations for a transaction in which the Sellers would sell to Joyvio their stake in an operating salmon farming business called Australis.  *Id.* ¶¶ 153-54.

25.     The negotiations matured into a deal after Respondent Isidoro Quiroga, the indirect owner of Australis, assured Joyvio CEO Shaopeng Chen that he would be able to sell Joyvio a salmon farming company that produced 100,000 tons of salmon annually while operating in compliance with Chilean environmental regulations.  *Id.* ¶ 164.

26.     The four Seller entities, collectively, owned 95.41% of the shares of Australis.  The Sellers, in turn, were owned and controlled by Isidoro Quiroga, his family members and co-Respondents in the Arbitration (María Victoria Quiroga Moreno, María Dolores Quiroga Moreno, María Dolores Feliú Quiroga, Jorge Esteban Feliú Quiroga, and Paulina Andrea Feliú Quiroga), and Benjamín S.A. (which was also a direct owner and Seller of Australis).  *Id.* ¶¶ 150-51.

27.     On February 28, 2019, the Petitioners entered into the SPA with the Sellers for the sale of Australis.  *See generally* SPA.  Respondents Isidoro Quiroga Moreno and Maria Victoria Quiroga Moreno signed the SPA on behalf of the Sellers.  *Id.* at 60.

28.     The SPA is governed by Chilean law and provides that arbitrations under the SPA are seated in Santiago, Chile.  *See* SPA §§ 1.52, 9.9, 9.12.  Section 9.12 of the SPA contains an arbitration provision requiring the parties to arbitrate disputes:

> Any and all doubt, difficulty or difference between the Parties and/or the Guarantor and/or Mr. Isidoro Quiroga Moreno arisen under or in connection with this Agreement, its interpretation, fulfilment, validity, performance, termination, resolution, nullity and any other, of any kind whatsoever, including without limitation those relating to the existence and validity of this Clause, any matter relating to the competence and/or jurisdiction of the arbitrators and the faculties granted to the arbitrators hereby, and the determination of the applicability of the liquidated damages clause and indemnities, as the case may be, shall be settled each time, by a panel of three arbitrators in accordance with the Rules of the Arbitration of the Arbitration and Mediation Centre of the Chamber of Commerce of Santiago A.G. in force at that time, which is deemed herein as part of this Clause and acknowledged and accepted by the Parties.

29.     The SPA provides that it "shall be binding upon and inure to the benefit of each Party and its legal successors and authorized assignees."  *Id.* § 9.3(b).

30.     As provided in the SPA, the seat of an arbitration thereunder is Santiago, Chile, and the language of the arbitration is Spanish.  *Id.* § 9.12

31.     The law applicable to arbitrations arising under the SPA is Chilean law.  *Id.* §§ 9.12, 9.9, 1.52.

32.     Through the SPA, the Sellers sold 95.41% of Australis to Joyvio at a purchase price of US$ 877,900,420.03.  *See* Award ¶¶ 179, 656-58, 660.  That sum, in turn, was part of a larger public offer in which Joyvio acquired 99.838% of Australis for a total price of US$ 920,132,468.  *Id.* ¶¶ 158, 179.

33.     Joyvio's interest in the business, and the calculation of the price paid, were based on Australis's production capacity as represented by Quiroga and the Sellers—specifically, that Australis could, in the short term, produce 100,000 tons annually operating in compliance with Chilean environmental regulations.  *Id.* ¶ 164.  As the Tribunal later found, "there is no doubt that

Australis' production capacity was the relevant factor in determining the company's EV, since that was its main asset."  *Id.* ¶ 176.

34.     To ensure that this important representation concerning production capacity and regulatory compliance was formalized, the parties codified it in the representations and warranties in Section 4 of the SPA.  Specifically in Section 4.2(i), titled "Environmental Matters," the Sellers represented, in four subparts, that:

> (i)   "The Company and the Company Subsidiaries are, and since January 1, 2013 have been, ***in compliance in all material respects with Environmental Laws***";

> (ii)  "The Company and the Company Subsidiaries have (and, to the extent applicable, have timely filed applications to renew) all material Environmental Permits required to develop the Business, and is, and ***since January 1, 2015 have complied in all material respects with all such Environmental Permits***, and all such Environmental Permits are in full force and effect, and no suspension, cancellation or revocation of any such Permit is pending or threatened";

> (iii) "None of the Sellers or its Affiliates, or the Company or the Company Subsidiaries have received any written notice from any Government Authority of any violation or alleged violation of, or lability or alleged liability under, any Environmental Law or Environmental Permit, and there is no judicial or administrative action, demand, claim, complaint, warning letter, hearing, suit, investigation or proceeding pending, or to the Sellers' Knowledge threatened in writing, against the Sellers or its Affiliates, or Company or the Company Subsidiaries under any Environmental Law, and none of the Sellers or its Affiliates, or Company or the Company Subsidiaries are subject to any judgment"; and

> (iv) "Except as could not reasonably be expected to result in any material Environmental Liability, (i) to the Sellers' Knowledge there has been no release by a third party, and (ii) there has been no release by the Company or the Company Subsidiaries at, on, under or from, and no Hazardous Material is present at, on or under, any property currently owned, leased or operated by the Company or the Company Subsidiaries, or any other location."

SPA § 4.2(i) (emphasis added).

35.     Joyvio took over Australis in July 2019.  *See* Award ¶¶ 163, 252-53.  Over the following two years, the image of Australis portrayed by the Sellers and Respondents fell apart and the Sellers' deception was revealed.

36.     Specifically, by February 2021, Joyvio became aware that, contrary to the representations of the Sellers and the Respondents in Section 4.2(i) and elsewhere, Australis's projected annual production capacity of 100,000 tons was in excess of that which it was legally permitted to produce, and thus in violation of applicable Chilean environmental regulations.  *See, e.g.*, *id.* ¶¶ 230, 270-72.  In fact, under Respondents' control, Australis had perennially disregarded its permitted harvesting limits.  *Id.* ¶ 270.  Australis, accordingly, pursued its lower legally permitted production capacity, rather than the illegally high 100,000 tons annually that Quiroga had promised.

37.     Given that Australis's permitted production capacity was considerably lower than that which the Sellers and Respondents had represented to Joyvio and based the SPA sale price on, Australis was worth far less than the purchase price.   In other words, Respondents' misrepresentations in Section 4.2(i)—that Australis was in compliance with all environmental laws, when in reality it was not—allowed them to overcharge Joyvio for the purchase of Australis.

## II.     The Arbitration

38.     On January 26, 2023, Petitioners filed a request for international arbitration with the CAM against the Sellers, alleging, among other things, that Sellers had misrepresented representations and warranties in the SPA concerning the amount of fish harvesting being done by Australis, and the company's purported compliance with Chilean regulations, prior to the sale.  Award ¶ 1.

39.     The parties agreed in the SPA that a three-member Tribunal would resolve the matter and that each party would appoint one member, who would together select the third member to act as chairperson of the Tribunal.  SPA § 9.12.

40.     On January 26th, 2023, Claimants proposed Mr. Andrés Jana Linetzky, a Chilean national, as arbitrator, a position he accepted on March 27, 2023.  Award ¶ 5.  On March 3, 2023, Respondents proposed Mr. Ramón Cifuentes Ovalle, also a Chilean national, who accepted the position on March 27, 2023.  *Id.*  On May 19, 2023, the General Manager of the Santiago Chamber of Commerce confirmed Mr. Jana Linetzky and Mr. Cifuentes Ovalle as members of the Tribunal and appointed Mr. Pedro Pablo Vergara Varas, a Chilean national, as President of the Tribunal.  *Id.* ¶ 6.  The Tribunal was sworn into service on June 5, 2023.  *See* Sternberg Decl., Ex. C.

41.     On August 31, 2023, Claimants submitted their Statement of Claim.  Award ¶ 23.

42.     On November 13, 2023, Respondents submitted their Statement of Defense.  *Id.* ¶ 27.

43.     Following discovery, a document production phase, and further briefing by Claimants and Respondents, a nearly four-week hearing was conducted in person before the Tribunal in Santiago, Chile from August 5, 2024 to August 30, 2024.  *See id.* ¶¶ 82-103.  At the hearing, several witnesses provided testimony and were subject to cross examination before the Tribunal.  *Id.*  Each side submitted documentary evidence as proof of their claims and defenses. *See id.* ¶¶ 33-103.

44.     The Claimants and Respondents were represented by counsel, who had the opportunity to present opening and closing statements, examine witnesses, introduce documentary evidence, and object to the admission of evidence.  *See id.* ¶¶ 33-103, 133-44 (list of parties'

exhibits, witness statements, and legal authorities in the Arbitration).  The Tribunal also conducted site visits to locations relevant to the dispute in Chile on November 26 and 27, 2024.  *Id.* ¶ 145.

45.     Following the hearing, the parties submitted their post-hearing briefings and statements on costs on December 6, 2024.  *Id.* ¶¶ 119-22.  The Tribunal called the parties for additional argument on December 20, 2024, followed by proposed conciliation.  *Id.* ¶ 125.  The Tribunal called the parties to further conciliation on May 13, 2025.  *Id.* ¶ 132.

46.     The Tribunal then executed the Award on May 22, 2025, and issued it to the parties on August 1, 2025.

### III.   <u>**The Award**</u>

47.     After reviewing and considering the evidence presented, the witness testimony, and the parties' briefs and arguments, the Tribunal issued a thorough and well-reasoned arbitration Award of 241 pages.  *See* Award ¶¶ 1-730.  The Tribunal found itself competent to adjudicate the dispute under the arbitration agreement, addressed the issues raised by the parties, and ultimately ruled in favor of Claimants.  *See id.* ¶¶ 4, 146-730.  Respondents' appointee, Mr. Cifuentes Ovalle, issued a 9-page dissent.  *Id.* ¶¶ 731-64.

48.     The Tribunal declared that Respondents had breached the SPA by making incomplete statements in Section 4.2(i) of the representations and warranties in the SPA, and awarded Joyvio damages representing the amount that it had overpaid as a result of Respondents' misstatements.  *See id.* ¶¶ 386, 660.

49.     Among other things, the Tribunal found, with respect to Australis's history of unlawful overproduction, "the evidence analyzed also shows that there was internal knowledge within Australis of a latent problem and of the potential contingencies that could arise from it. Company executives were aware of and discussed the potential contingency that the authority

would begin to enforce mandatory compliance with the maximum projected harvest." *Id.* ¶ 217. Thus, prior to sale, Australis had "exceeded the powers granted by these [government] permits in terms of harvesting," and "there is no doubt that Australis was producing beyond what was literally permitted by each of the [permits] for its centers, and that this was a fact known within the company ... whether prior to the negotiations or even during the due diligence process." *Id.* ¶¶ 379-80.

50.     The Tribunal determined that "the sellers made omissions or inaccuracies in the representations made in clause 4.2 of the agreement, which constitute a breach of their obligations under the promise agreement and the SPA to adequately disclose the company's situation." *Id.* ¶ 384.  Further, "[t]hese inaccuracies or omissions consist of the fact that Australis appeared to be complying with its [environmental permits], but was producing beyond the [] limits." *Id.* ¶ 385. Given this, "sellers had reasonable grounds to suspect that, ultimately, when harvesting, they would exceed the [permitted limits], with the obvious risk that the authority would impose penalties for overproduction in the future, which is what happened in 2021" after Joyvio purchased Australis. *Id.*  The Tribunal added that "this suspicion was not communicated to sellers," and "[o]n the contrary, [Sellers] declared that the company complied with all environmental regulations, even though this was not the case."  *Id.*  In short, "this excess production was not expressly disclosed by the sellers," and the "sellers did make a false statement in one of the representations set out in the SPA—specifically, the representation contained in clause 4.2(i)."  *Id.* ¶¶ 646, 643.

51.     Based on these and related factors, the Tribunal ruled that "the sellers breached their obligations under clause 4.2(i) of the agreement, regarding representations and warranties." *Id.* ¶ 386.

52.     The Tribunal, having "found that the statement in clause 4.2(i) of the SPA was not complete or accurate," then "determine[d] the effects of that breach" with respect to the damages that Respondents had caused to Joyvio. *Id.* ¶ 648.  It found that Joyvio was entitled to damages as "calculated in relation to the amounts that were overpaid by the buyers, all with respect to the maximum annual production tons that the buyer had in view, compared to those that it could actually harvest in accordance with the [permitted] limit." *Id.* ¶¶ 650-51.

53.     The Tribunal determined that, when accounting for the correction to Australis's represented production capacity to comply with environmental laws, "instead of calculating a price of USD 920,132,468" for the entire transaction, "it should have been USD 692,472,000." *Id.* ¶¶ 656-58.  "Therefore, an excess of USD 227,660,468 was paid and, given that the defendants received 95.4% and not 100%, there is an excess in favor of the defendants of **USD 217,211,355**." *Id.* ¶ 657.  The Tribunal attributed this liability among the Respondents according to the relative percentage that each Seller had received. *Id.* ¶¶ 658, 660.

54.     The Tribunal thus awarded Joyvio: (i) **US\$ 195,490,219.974** against Respondent Benjamín S.A., on its own behalf and as the legal successor of Inversiones ASF Limitada; (ii) **US\$ 10,860,567.691** against Respondent María Victoria Quiroga Moreno, as legal successor to the company Inversiones Arlequín Dos Limitada; and (iii) **US\$ 10,860,567.691** against Respondents María Dolores Quiroga Moreno, María Dolores Feliú Quiroga, Jorge Esteban Feliú Quiroga, and Paulina Andrea Feliú Quiroga, as legal successors of the company Inversiones Ruiseñor Dos Limitada. *Id.* ¶ 730(iv).  The Tribunal further held that Joyvio was entitled to interest on those amounts at the legal rate set for transactions denominated in foreign currency, in accordance with the rate published by Chile's Financial Market Commission, accruing from July 1st, 2019, until full payment; and an award of 15.4% of its arbitral costs of CLP 2,152,332,117.00, equaling

**CLP 331,459,146**, against the Respondents in the same proportion as the damages.  *Id.* ¶¶ 728, 730(v), 730(vi).

<u>**REQUEST FOR CONFIRMATION OF THE AWARD**</u>

55.     This Court should confirm the Award under the FAA and the Convention.  The Award was rendered in accordance with the parties' SPA in the proceedings administered by the CAM, in which all parties actively participated and were represented by qualified legal counsel and is proper in all respects.

56.     This Petition is timely because it is filed within three years after the issuance of the Award.  *See* 9 U.S.C. § 207.

57.     The Award arose out of a legal relationship that is commercial in nature and is not entirely between citizens of the United States, thereby falling within the purview of the Panama Convention.  *See* 9 U.S.C. §§ 202, 305.

58.     The Award was issued in Santiago, Chile.  Chile and the United States are signatories to the Panama Convention.

59.     The Award is final and binding within the meaning of the Panama Convention and the FAA and is therefore binding on the parties and subject to recognition and enforcement in the United States.

60.     The Panama Convention and the FAA require that a federal "court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  *Corporacion AIC, SA v. Hidroelectrica Santa Rita S.A.*, 66 F.4th 876, 882 (11th Cir. 2023) (quoting 9 U.S.C. § 207); *see also Earth Sci. Tech, Inc. v. Impact UA, Inc.*, 809 F. App'x 600, 605 (11th Cir. 2020) (stating confirmation is "require[d]" absent one of the specified defenses).  Accordingly, "[c]onfirmation of an arbitration award under

the Panama Convention is a summary proceeding." *Empresa de Telecommunicaciones de Bogota S.A. E.S.P. v. Mercury Telco Grp., Inc.*, 670 F Supp. 2d 1357, 1361 (S.D. Fla. 2009).  Thus, "[a] district court's 'review of a foreign arbitration award is quite circumscribed'" and "there is a general pro-enforcement bias manifested in the Convention." *Four Seasons Hotels & Resorts B.V. v. Consorcio Barr, S.A.*, 613 F. Supp. 2d 1362, 1366-67 (S.D. Fla. 2009) (first quoting *China Nat'l Metal Products Import/Export Co. v. Apex Digital, Inc.,* 379 F.3d 796, 799 (9th Cir. 2004); second omitted, cleaned up); *see also Yusuf Ahmed Alghanim Sons v. Toys "R" Us*, 126 F.3d 15, 19 (2d Cir. 1997) ("[T]he district court's role in reviewing a foreign arbitral award is strictly limited[.]").

61.     With respect to actions for enforcement of an arbitration brought in a foreign state, as Joyvio's is here, "Article V sets out a limited number of grounds on which a court can refuse to recognize and enforce an arbitral award."  *Corporacion AIC*, 66 F.4th at 884; *see also id*. at 889 (the Panama Convention's "enforcement and recognition provisions are 'substantively identical' to those in the New York Convention," including the "seven defenses" in Article V) (citations omitted); *Yusuf Ahmed Alghanim & Sons,* 126 F.3d at 23 (a foreign state "may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention"); Panama Convention, Art. V; 9 U.S.C. § 301.

62.     "[T]he party opposing confirmation bears the burden of proving the applicability of the Convention's enumerated defenses." *Four Seasons Hotels & Resorts B.V.*, 613 F. Supp. 2d at 1367 (citation omitted).  "The burden is a heavy one, as the showing required to avoid summary confirmance is high." *Commodities & Mins. Enter. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 810 (2d Cir. 2022) (citation and quotation marks omitted).  None of the narrow grounds for refusal or deferral of confirmation of the Award applies here.

63.     *First*, the SPA and Award are valid under Chilean law, which provide for arbitration and enforcement of arbitral awards.  *See* Panama Convention, Art. V.1.(a).

64.     *Second*, the Respondents were given notice of the CAM Arbitration proceedings and were able to, and did, present their case.  *See id.* Art. V.1.(b); Award § II (procedural history). "[T]his exception is interpreted narrowly and protects only against serious procedural defects that have a material effect on arbitral proceedings, rendering them fundamentally unfair."  *Grupo Unidos por el Canal, S.A. v. Autoridad del Canal de Panama*, 78 F.4th 1252, 1266 (11th Cir. 2023) (citation omitted).

65.     *Third*, the Award deals with matters contemplated in the SPA because it concerns the Respondents misrepresentations in, and breaches of, the SPA and applicable law, which injured Joyvio.  *See* Panama Convention, Art. V.1.(c).

66.     *Fourth*, the CAM Arbitration procedure was in accordance with the SPA and agreement of the parties.  *See* Panama Convention, Art. V.1.(d); Award §§ I.F-J, II (parties' agreements as to arbitral procedure); *Grupo Unidos*, 78 F.4th at 1266 (this defense fails when "the parties explicitly settled on a form for the arbitration, and their commitment was respected") (cleaned up).

67.     *Fifth*, the Award is final and binding on the parties.  *See* Panama Convention, Art. V.1.(e); Award ¶ 730 (disposition).

68.     *Sixth*, the subject matter of the Arbitration and the Award was eminently capable of settlement by arbitration under U.S. law.  *See* Panama Convention, Art. V.2.(a).  U.S. courts routinely enforce arbitral awards involving contractual breaches and claims.  *E.g. Grupo Unidos*, 78 F.4th at 1257-61.

69.     **Seventh**, recognition and enforcement of the Award would not contravene U.S.
public policy.  "This defense, too, is construed narrowly in light of the presumption favoring
enforcement of international arbitral awards, and is rarely successful." *Grupo Unidos*, 78 F.4th at
1265 (cleaned up).  It applies "only when confirmation or enforcement of a foreign arbitration
award would violate the forum state's most basic notions of morality and justice." *Id.* (citation
omitted).  Enforcement here does not offend any policy, but supports the United States' "strong
federal policy favoring arbitration, which applies with special force in the field of international
commerce." *Cvoro v. Carnival Corp.*, 941 F.3d 487, 493 (11th Cir. 2019). Thus, U.S. public
policy strongly supports enforcement of the Award.  *See Leeward Const. Co. v. Am. Univ. of
Antigua-Coll. of Med.*, 2013 WL 1245549, at *1 n.8 (S.D.N.Y. Mar. 26, 2013) ("Confirmation of
international arbitration awards falling under the New York Convention is a 'favored policy' of
the United States—a public interest that weighs here heavily.") (cleaned up), *aff'd*, 826 F.3d 634
(2d Cir. 2016).

70.     For the foregoing reasons, and as Joyvio will explain more fully in an opposition to
any forthcoming motion opposing enforcement that the Respondents may file, the Respondents
cannot substantiate any ground to resist enforcement under Article V of the Panama Convention,
and this Court respectfully should confirm the Award.

## **PRAYER FOR RELIEF**

WHEREFORE, Joyvio prays that:

1.      The Court issue an order recognizing and confirming the Award, as authorized by 9 U.S.C. §§ 9, 207, 302;

2.      The Court enter a money judgment in the amount of  (i) **US$ 195,490,219.974** against Respondent Benjamín S.A.;  (ii) **US$ 10,860,567.691** against Respondent María Victoria Quiroga Moreno;  (iii) **US$ 10,860,567.691** against Respondents María Dolores Quiroga Moreno, María Dolores Feliú Quiroga, Jorge Esteban Feliú Quiroga, and Paulina Andrea Feliú Quiroga;  (iv) interest on those amounts at the legal rate set for transactions denominated in foreign currency, in accordance with the rate published by Chile's Financial Market Commission, accruing from July 1st, 2019, until the date of entry of judgment recognizing and confirming the Award, which amount should be added to the principal amounts set forth in (i)-(iii); and (v) 15.4% of Joyvio's arbitral costs, equaling **CLP 331,459,146**, converted to U.S. Dollars and apportioned to the Respondents in the same proportion as the amounts set forth in (i)-(iii).

3.      The Court retain jurisdiction over this action, and, pursuant to Rule 69 of the Federal Rules of Civil Procedure, permit any discovery that may be proper to aid in the enforcement of the money judgment;

4.      The Court award attorney's fees and costs in relation to the instant confirmation proceeding under the SPA and applicable law; and

5.      The Court grant any other monetary, injunctive, or other relief that, in the interests of justice, it deems necessary and proper.

Dated:  Miami, Florida
August 15, 2025

**QUINN EMANUEL URQUHART &
& SULLIVAN, LLP**

By:  /s/   *Jason D. Sternberg*
Jason D. Sternberg
Fla. Bar No. 72887
2601 South Bayshore Dr, Suite 1550
Miami, FL 33133
Tel: 305-402-4880
Fax: 305-901-2975
jasonsternberg@quinnemanuel.com

Dennis Hranitzky (*pro hac vice*
forthcoming)
Tanner Lyon (*pro hac vice* forthcoming)
2755 E. Cottonwood Parkway, Ste. 520
Salt Lake City, Utah 84121
Tel: 801-515-7300
Fax: 801-515-7400
dennishranitzky@quinnemanuel.com
tannerlyon@quinnemanuel.com

Debra O'Gorman (*pro hac vice*
forthcoming)
295 5th Ave,
New York, NY 10016
Tel: 212-849-7000
Fax: 212-849-7100
debraogorman@quinnemanuel.com

Gregg Badichek (*pro hac vice*
forthcoming)
1300 I Street NW Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Fax: (202) 538-8100
greggbadichek@quinnemanuel.com

*Attorneys for Petitioners Food
Investment SPA, Joyvio Group Co.,
Ltd., and BJ Joyvio Zhencheng
Technology Co., Ltd.*